**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4412-19

MELANIE ALBERTO-KOLMER,

    Plaintiff-Appellant,

 v.

SHAWN M. KOLMER,

    Defendant-Respondent.

_____

Submitted October 12, 2021 – Decided November 10, 2021

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-1389-15.

Cacciuttolo Billera LLC, attorneys for appellant (Paul Cacciuttolo, on the briefs).

Callagy Law, PC, attorneys for respondent (Brian P. McCann, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Melanie Alberto-Kolmer appeals from a limited provision of the June 26, 2020 order modifying the amount of weekly child support owed by her former husband, defendant Shawn M. Kolmer.[1] We reverse the child support award and remand for further proceedings.

The parties were married in 2004 and divorced in 2015. The parties' 2015 Child Custody and Property Settlement Agreement (agreement) was incorporated into their judgment of divorce. Under the agreement, the parties share joint legal custody of their four children, with plaintiff designated as the parent of primary residence (PPR) and defendant designated as the parent of alternate residence (PAR). Initially, defendant was afforded weekly parenting time from Thursdays at 3:00 p.m. until Saturdays at 3:00 p.m. Each party also was entitled to share certain holidays with the children and two weeks of summer vacation time. Given this parenting time schedule, defendant was ordered to pay $663 per month in child support.

In August 2018, defendant filed a motion to alter the custodial arrangement to one of joint physical custody. On October 24, 2018, the motion

---

[1] Defendant's name also is referenced as Shaun Kolmer in the parties' submissions.

A-4412-19

judge declined this request but expanded defendant's parenting time to reflect an alternating weekly schedule as follows: during week one, defendant was entitled to be with the children from Wednesdays at 3:00 p.m. until Sundays at 7:00 p.m.; during week two, he had the children from Thursdays at 3:00 p.m. through Saturdays at 11:00 a.m. Also, the judge directed the parties to work with a parent coordinator "to devise a parenting time schedule for the summer months, which provides both parties with equal time with the children on the weeks other than [their two weeks of] summer vacation parenting time." Additionally, the judge ordered the parties to exchange updated financial information so defendant's child support could be reassessed by February 2019.

In August 2019, defendant again moved to expand his parenting time and reiterated his request to compel the parties to share joint physical custody. He also sought to modify his child support obligation and asked for an award of counsel fees and costs. After the parties were unsuccessful in negotiating a resolution to the issue of child support, plaintiff filed a cross-motion, requesting, in part, that the judge recalculate defendant's child support obligation. She also asked the judge to deny defendant's request for joint physical custody and his remaining prayers for relief.

A-4412-19

On November 20, 2019, the trial court heard argument on the parties' cross applications. Plaintiff's counsel contended defendant failed to establish a basis for modifying the parenting time schedule. He further argued that pursuant to the Child Support Guidelines (Guidelines), plaintiff enjoyed nine overnights in a fourteen-day cycle and that defendant was incorrect in claiming he enjoyed six overnights during that same period because "[w]hen you really look at the [Guidelines] and the appendix, . . . you have the issue of the [twelve] hours of a day and . . . it doesn't necessarily fall to the overnight."[2] It appears this somewhat vague comment by counsel was intended to direct the court's attention to the fact that under the Guidelines, an "[o]vernight means the majority of a 24-hour day (i.e., more than 12 hours)." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶14(b)(1), www.gannlaw.com (2022) (emphasis added).

---

[2] The transcript from the November 20, 2019 argument reflects that plaintiff's counsel argued defendant "ha[d] four [overnights]," whereas plaintiff enjoyed "nine" overnights with the children during a fourteen-day period. Although this allocation would encompass only thirteen overnights in a fourteen-day period, it is unclear to us whether plaintiff's counsel misspoke or the reference to "four" overnights represents a transcription error. We need not determine the source of the error because the transcript from the June 26, 2020 argument, as well as plaintiff's merits brief, confirms plaintiff's position is that during the school year, in "week one" defendant spends four overnights with the children and in "week two," he spends one overnight with them, for a total of five overnights in a fourteen-day period.

The judge responded to counsel's statement, remarking, "doesn't that language in the appendix regarding the [twelve] hours, isn't that in the appendix for people who do not have an overnight but rather they only have day parenting time[?]"  Plaintiff's counsel disagreed, stating he understood "where [the judge was] coming from" but that the analysis for calculating defendant's share of overnights was as he had asserted.

Defendant's counsel rejected plaintiff's definition of "overnights" under the Guidelines, mistakenly arguing, "the [c]ourt's right, the hours [do not] apply here.  This is not a question of applying hours.  That is to figure out if a parent doesn't have overnights, how much money they're spending on the kids when they're with them."

The judge proceeded to calculate defendant's share of overnights to determine his child support obligations.  She concluded defendant enjoyed six out of fourteen overnights during the school year and explained:

> There are ten months out of the year that are not summer because summer is basically July and August. So we calculate 4.3 weeks a month times ten months is . . . [forty-three] weeks times seven days a week is 301 days.  Under the current schedule, defendant has six out of [fourteen] overnights.  That equates to 129 out of 301 overnights during the school year.
>
> Then we have the summer.  Separate from the vacations, they're each receiving approximately three

weeks equal parenting time or they're supposed to receive it per my order . . . . That's another [twenty-one] overnights. That gives the defendant 150 overnights a year.

Plaintiff's counsel then stated he "wanted to also highlight . . . that it's holidays and the vacation time that is not included in the calculation of the overnights for the [PAR]" under the Guidelines. Because the parties' attorneys were unable to agree on whether holiday parenting time should be included in the number of overnights enjoyed by defendant, the judge stated,

> I'm not going to do the child support calculation today. Someone's going to send me for . . . 2018 every single day from January 1st to December 31st who the children were with. That's how we want to do it, that's what we'll do.
>
> . . . . I can't just say there's [thirty] holidays and assume they're all overnight and just put them all to [plaintiff.]

Following argument, the judge entered an order dated November 20, 2019, reflecting her determination that defendant

> has 150 overnights per year with the four children as follows: (a) [ten] months of the year during school, he receives [six] out of [fourteen] overnights, or 129 out of 301 overnights; and (b) [d]efendant receives [twenty-one] overnights for the three weeks of non-vacation parenting time he has during the summer (i.e. each party receives two weeks of vacation time with the children during the summer and the remaining weeks, which the [c]ourt estimated at [six] in total are equally

6

A-4412-19

divided between the parties so [d]efendant receives [three] weeks of parenting time during the summer).[3]

Additionally, to resolve the parties' dispute regarding how to allocate holiday overnights between them, the November 20, 2019 order directed plaintiff's counsel to "provide . . . a calendar for the entire year of 2019" spelling out which days each party spent with the children "and then highlight which overnights [p]laintiff contends [d]efendant should not receive credit for." The judge also directed defendant's attorney to respond to plaintiff's submission and indicate "whether [d]efendant is in agreement with [p]laintiff's calendar and position regarding holiday overnight parenting time" and if not, set forth his "position regarding same." Further, the judge directed the parties to exchange updated financial information so she could "finalize the child support calculation and render a subsequent [o]rder setting forth the . . . child support obligation with an effective date of February 1, 2019" consistent with the prior court order.

---

[3] The calculation of overnights set forth in the November 20, 2019 order assumes the summer schedule spans a ten-week period (i.e., two weeks of vacation time and an estimated three weeks of non-vacation time for each parent). But the order also refers to defendant spending "129 out of 301 overnights" during the balance of the year. Because the judge referenced the same figure of 129 overnights during argument, and based that figure on a forty-three-week period of non-summer months, we direct that any recalculation of overnights on remand should cover a fifty-two-, rather than a fifty-three-week period.

On December 17, 2019, the judge considered the parties' updated submissions and entered an order directing defendant to pay child support at the rate of $161 per week for the period between February 1, 2019 and June 30, 2020, and $218 per week thereafter.[4] The December 17 order, much like the November 20 order, reflects that each child support figure was based on defendant enjoying six overnights every fourteen days with his children during the school year and twenty-one overnights during the summer, for a total of 150 overnights per year.[5]

---

[4] The increase in child support as of July 1, 2020 accounted for the fact that defendant no longer maintained the children on his health insurance plan as of that date.

[5] In a footnote on page two of the December 17 order, the judge also addressed the parties' dispute over how to allocate overnights involving holiday time. This part of the order stated:

> Plaintiff contends that [d]efendant should not receive credit for overnight parenting time he had on the following holidays as set forth in her attorney's letter . . . of December 2, 2019[:] February 15, 2019, October 9, 2019, November 8, 2019, November 28, 2019, December 26, 2019 and December 27, 2019. The [c]ourt did not deduct these [six] overnights from [its] calculation of . . . overnights . . . based on Section 13(b)(2) of . . . Appendix IX-A of the New Jersey Court Rules, which provides "Extended PAR Time in excess of five consecutive overnights that represent a single event or intermittent occurrence (i.e. vacation or

On May 28, 2020, plaintiff moved to modify the December 17 order, asking the judge to: (1) amend the Guidelines worksheets attached to the December 17 order to reflect defendant's correct tax filing status; (2) amend the December 17 order to credit defendant with 121 overnights (rather than 150 overnights); and (3) recalculate defendant's child support obligation based on these "two amendments."

The judge heard argument on the motion on June 26, 2020, by which time plaintiff was represented by new counsel. Plaintiff's successor attorney contended the judge should amend the December 17 Guidelines worksheet to reflect defendant's proper tax filing status as "married," and that defendant's child support obligation should be based on his spending five, not six overnights during each two-week period of the school year. The judge agreed with counsel's first argument, but rejected the latter argument.

holiday time) shall not be used to determine the non-custodial parent's annual percentage of overnight time for calculating regular visitation . . . or a shared-parenting adjustment." The additional deductions for holiday parenting time sought by [p]laintiff included four single day overnights and one two consecutive days overnights, and therefore, they are not to be deducted from [d]efendant's annual overnights because each "event" or "intermittent occurrence" does not total five consecutive overnights as required under Comment 13(b)(2).

A-4412-19

In distinguishing "the two issues raised by plaintiff . . . regarding the prior child support calculations," the judge acknowledged "there was a clerical error in the child support worksheet solely with respect to defendant's tax status" and that the worksheet should be modified to reflect defendant was married, rather than single. She aptly noted such clerical errors can be corrected "at any time" under Rule 1:13-1.

But the judge viewed plaintiff's request that the court revisit its calculations regarding the number of overnights allotted to defendant as "something completely different." The judge explained that if plaintiff was dissatisfied with the calculation of overnights reflected in the December 17 order, plaintiff "had options available to her at that time. She could have filed a reconsideration motion. Under the Court Rules, reconsideration motions have to be filed within [twenty] days . . . . So a reconsideration motion is clearly out of time." The judge further noted that because plaintiff also missed the forty-five-day deadline to appeal the December 17 order, she was procedurally barred from obtaining relief from that order. Moreover, the judge denied plaintiff's reconsideration request "on a substantive basis," finding plaintiff had not demonstrated "why the number of overnights . . . in the prior court order is incorrect."

10

Following argument, the judge entered a conforming order dated June 26, 2020, granting plaintiff's request to correct the clerical error reflected in the December 17 Guidelines worksheet, but denying plaintiff's request for reconsideration of the December 17 allocation of overnights between the parties. The June 26, 2020 order contains language similar to that set forth in the November 20 and December 17 orders regarding the allocation of overnights, including holidays, and how the judge considered that allocation in fixing defendant's child support obligations.

In September 2020, the judge provided us with an amplification of her June 26 opinion, as permitted under Rule 2:5-1(b). She confirmed her "prior decision calculated overnights during the [ten-]month school year" based on "4.3 weeks per month," and that defendant enjoyed "six out of [fourteen] overnights" during the ten-month school year because

> (a) in week one [defendant] has the children from Wednesday at 3:00 p.m. until Sunday at 7:00 p.m., which equates to four overnights – Wednesday overnight into Thursday, Thursday overnight into Friday, Friday overnight into Saturday, and Saturday overnight into Sunday. <u>If you take the actual time periods, then he has the children more than [twelve] hours in a [twenty-four] period</u> from: (i) Wednesday at 3:00 p.m. until Thursday at 2:59 p.m., from Thursday at 3:00 p.m. until Friday at 2:59 p.m., from Friday at 3:00 p.m. until Saturday at 2:59 p.m., and from Saturday at 3:00 p.m. until Sunday at 2:59 p.m. (his

11

parenting time ends at 7:00 p.m. on Sunday), for a total of four overnights; and (b) in week two [defendant] has the children from Thursday at 3:00 p.m. until Saturday at 11:00 a.m., which equates to two overnights – Thursday overnight into Friday and Friday overnight into Saturday. <u>If you take the actual time periods, then he has the children more than [twelve] hours in a [twenty-four] hour period</u> from: (i) Thursday at 3:00 p.m. until Friday at 2:59 p.m., and Friday at 3:00 p.m. until Saturday at 2:59 p.m. (his parenting time ends at 11:00 a.m. on Saturday), for a total of two overnights. (Emphasis added).

The judge also explained that she found defendant enjoyed twenty-one overnights during "the two summer months" and that this figure, coupled with the 129 overnights defendant enjoyed during the school year equated to 150 overnights. Further, the judge further stated she "distinguished Paragraphs 13(a) and 14(b)(1) of Appendix IX-A" of the Guidelines "to relate to situations when a non-custodial parent does not actually have a child overnight <u>but has the child for more [than twelve] hours in any [twenty-four] hour period</u>, then that parent receives the credit for an overnight in connection with the child support calculation." (Emphasis added).

On appeal, plaintiff again argues the judge erred in interpreting the term "overnight," and that the error resulted in the judge fixing an inappropriate level of child support based on defendant receiving credit for additional overnights to which he was not entitled. We agree.

A-4412-19

Ordinarily, we defer to the factual findings of the Family Part because of its "special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Brennan v. Orban, Jr., 145 N.J. 282, 300-01 (1996)). However, questions of law determined by the trial court require de novo review by the appellate court. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). We consider the interpretation of the Guidelines to be a question of law.

The Guidelines contemplate that various criteria will be met before a judge utilizes a shared parenting worksheet to calculate child support. Specifically, paragraph 14(c)(2) of Appendix IX-A states that the parent claiming to be the PAR must establish he or she

> has or is expected to have the child for the substantial equivalent of two or more overnights per week over a year or more (at least [twenty-eight percent] of the time) and . . . can show that separate living accommodations for the child are provided during such times (i.e., evidence of separate living accommodations maintained specifically for the child during overnight stays).
>
> [Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶14(c)(2).]

The Guidelines further provide in paragraph 14(c)(2)(a) that "[q]ualifying shared-parenting time shall not include extended PAR Time periods of five or

13

more overnights that represent vacations, holidays, or other periodic events . . . . " Id. ¶14(c)(2)(a). By contrast, parental visitation is defined separately in paragraph 13(a) as "less than the substantial equivalent of two or more overnights with the child each week (approximately twenty-eight percent of overnights excluding vacations and holidays)." Id. ¶13(a) (emphasis added). Accordingly, under defendant's existing parenting time schedule, it is clear he exercises parenting time above the twenty-eight percent threshold and is entitled to have child support calculated based on a shared parenting arrangement, consistent with paragraph 14 of Appendix IX-A.

Turning to the June 26 order, plaintiff agrees the judge properly credited defendant with twenty-one overnights during the summer, excluding his vacation time. We also are persuaded the judge correctly credited defendant with several non-consecutive holiday overnights in her overall calculations.[6] But we are satisfied the judge abused her discretion by ignoring the meaning of the term "overnight," as it is precisely defined in paragraph 14(b)(1) of

_____

[6] This result is permitted under paragraph 14(c)(2) of Appendix IX-A. Although the judge referenced paragraph 13(b)(2) in her December 17 and June 26 orders when addressing holiday overnights, this section of the Guidelines does not apply to shared parenting arrangements.

A-4412-19

Appendix IX-A to <u>Rule</u> 5:6A, when she concluded defendant has six overnights every fourteen days during the school year.

Notwithstanding the judge's detailed analysis, it is well established that an overnight is defined as "the majority of a 24-hour <u>day</u>" – not the majority of a twenty-four hour "period" under the Guidelines.  Thus, according to the existing parenting schedule, defendant has four overnights in "week one," i.e., he spends more than twelve hours with the children every Thursday, Friday, Saturday, and Sunday of this week; in week two, Friday is his only overnight because that is the only day between Thursday and Saturday that he spends over twelve hours in a day with the children.  We do not ignore that if defendant's parenting time ended at 12:01 p.m. on a Saturday during week two, instead of 11:00 a.m., that Saturday also would be deemed an "overnight."  But that scenario is not present in this case.

Accordingly, we reverse that portion of the June 26 order involving the calculation of defendant's child support obligations, and remand this matter to permit the judge to fashion a child support award based on the correct number of overnights.  Any recalculated support award should be effective as of the date

of plaintiff's modification motion in May 2020.  See N.J.S.A. 2A:17-56.23(a);[7]

see also Diehl v. Diehl, 389 N.J. Super. 443, 452 (App. Div. 2006) (discussing

retroactivity of support modification).  To that end, we disagree with plaintiff's

suggestion that she is entitled to relief retroactive to the entry of the December

17 order.  As the judge correctly observed when she conducted argument on

June 26, 2020, plaintiff waited several months to seek a substantive

reconsideration of the December 17 order, so her motion was untimely under

Rule 4:49-2.

Reversed and remanded for further proceedings consistent with this

opinion.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] N.J.S.A. 2A:17-56.23(a) provides:

> No payment or installment of an order for child support
> . . . shall be retroactively modified by the court except
> with respect to the period during which there is a
> pending application for modification, but only from the
> date the notice of motion was mailed either directly or
> through the appropriate agent.

A-4412-19